MARIE BURR ET AL. V. PETER PARKER, TREAS., ET AL.

1. BURDEN OF SHOWING BENEFIT TO LOTS OMITTED FROM IMPROVEMENT ASSESSMENT.

One seeking to enjoin a street assessment, on the ground that lots or lands that should have been assessed have been omitted, should make it appear that the omitted lots or lands derived some benefit from the improvement and therefore should bear a share of the cost thereof, and that a proper assessment, including the omitted lots or lands, would probably reduce the assessment on his property of which he complains.

2. BENEFITS DERIVED FROM IMPROVEMENT OF STREET, BASIS OF ASSESSMENT.

To bring a case within the purview of Sec. 2275 Rev. Stat. (repealed 96 O. L. 96) requiring the payment of a part of the cost of a street improvement by the city because of the treatment of street intersections on abutting property, it should be made to appear that such intersections on abutting property are benefited by the improvement, and it is not sufficient to show that the intersecting streets are benefited by the improvement.

[For other cases in point, see 1 Cyc. Dig., "Assessments," §§ 309-383.—Ed.]

[Syllabus by the court.]

INJUNCTION.

**F. J. Flagg** and **B. A. Hayes**, for plaintiffs.

**C. S. Northup** and **O. W. Nelson**, for defendants.

PARKER, J.

This [Marie Burr and Webb C. Hayes v. Peter Parker, Treas. of Lucas Co., Ohio, et al.] is an action brought to enjoin the collection of assessments levied upon lots and lands lying along Front street in East Toledo, for the costs of paving the street. The plaintiffs own certain of the lots so assessed, and the question that is presented for our consideration is, whether the assessment is invalid and should be enjoined because the city failed to include in the lots and lands to be assessed the intersections of the streets made by the crossing of other

Lucas County.

streets over Front street. It is conceded that these lands were not included and that no share of the cost or expense of improving Front street was assessed against the city because of these intersections. The whole costs of paving the intersections, however, were paid by the city. But it is contended by the plaintiffs that the statutes as they read at the time this improvement went forward, to wit, Secs. 2274 and 2275 Rev. Stat. (repealed, 96 O. L. 96), required not only that the city of Toledo should pay for the cost of improving and paving the intersections, but that, in addition thereto, the intersections should be regarded as property abutting upon the improvement and the city should be further assessed for the benefits thereto from the improvements.

In looking into the statutes we find that in the year when this improvement was inaugurated, 1900, and when it was going forward, in 1902, and from that time forward until the adoption of what we are in the habit of calling the new municipal code, Sec. 2274 (repealed, 96 O. L. 96), required that in the city of Toledo the costs of intersections should be paid for by a general tax on all the property in the city, and Sec. 2275 (repealed, 96 O. L. 96) contained this provision with respect to the intersections:

"For the purposes of assessment, a city of the first grade and a city of the third grade of the first class shall in all cases be considered as a property owner as to intersections, and any other property belonging to the corporation abutting on the street or highway so improved; and the assessment chargeable to the corporation, together with at least one-fiftieth part of all costs and expenses, as provided for in Sec. 2273 [repealed, 96 O. L. 96], may be included in any bonds issued for the improvement, and be paid for by it in like manner as by other property owners; * * *."

Considering the history of legislation upon the subject of intersections, we find that formerly the cities of Cincinnati and Toledo were excepted from the operation of Sec. 2274, so that in those cities the cost of intersections was not to be paid for out of the general levy, and Sec. 2275 providing a different method for laying a share of the burden of the costs of street intersections upon the city by assessing the city on account of intersections according to benefits thereto applied to Cincinnati alone; that Toledo, in 1889 (86 O. L. 119), was brought within the provisions of Sec. 2274, so that thereafter it paid the cost of improving intersections; and then on March 10, 1892, by a statute appearing in 79 O. L. 31, Sec. 2275 was made applicable to Toledo, and then and thereafter Toledo stood in a class by itself (if the construction is to be given to these statutes contended for by the

Burr v. Parker.

plaintiffs here) ; that is to say, it was required to bear the burden of the cost of the intersections, and in addition thereto was to pay out of the general funds the amount of the benefits resulting to the intersections by the paving thereof.  This was the rule applicable to Toledo—a system of double assessment, apparently, for practically the same thing or benefit.

We have undertaken to arrive at some solution of this question— some construction of these statutes—which would enable us to avoid this result of double assessments.  We have not been able to do it by any course of reasoning that was entirely satisfactory to us, though we think it ought to be done if possible.  In other words, we think that this legislation whereby Sec. 2275 was made applicable to Toledo, if not an absolute blunder, was at least ill-advised and inconsistent with the general policy of the state upon the subject.  But we find by looking into this record that we are not called upon in this case to solve this problem.

Counsel for plaintiffs have proceeded upon the theory that the statute, Sec. 2275, requires that the benefits to the *intersecting streets* shall be taken into consideration and shall be assessed against the city; but the statute does not so provide; it does not say that the *intersecting streets* shall be considered as property owned by the city so that the benefits thereto shall be paid by the city, but it says that the city shall be considered as a property owner as to the *intersections,* and we know that the intersections consist of the territory bounded by the street lines as they cross.  Now it may be, that, if it should be made to appear that some lots or lands that should have been assessed were omitted, such omission would render the assessment of the other lots and lands invalid so that the court would be required to enjoin the assessment and a new assessment would have to be made including those lots and lands; but certainly, where one goes into a court of equity with a claim of that character, he should make it appear affirmatively that the lots and lands which he says should have been assessed derived some benefit from the improvement, so that they should have been assessed and so it should appear at least probable that upon a reassessment some assessment would be laid upon such lots and lands and probably thereby the assessment upon his lots and lands would be lessened.  But that does not appear in this case with respect to these intersections; there is no statement in the petition and nothing in the agreed statement of facts to the effect that these intersections derived any benefit from the improvement —certainly not any benefit over and above the amount which was paid in paying for the costs of the paving of the intersections.  But there is

no allegation and no agreed statement of fact that they received any benefit whatever from the improvement. The averment is:

"That for some time prior to the first day of January, 1902, and on and ever since said day, the said city of Toledo has been a property owner of the intersection of the following named streets"—naming the streets which cross Front street—"that said committee in the assessment made and reported by it to the council and by the council approved and confirmed, failed and omitted to assess any sum whatever upon the said intersections, or any of them, nor did the common council of said city by said ordinance passed on the third day of March, 1902, require the said city to pay any part of the cost of improving said Front street; that said Front street is the only thoroughfare leading from Millard avenue to the Cherry street bridge; that it is the only public way whereby teams and pedestrians traveling on any of said intersecting streets can reach the bridge over the Maumee river at Cherry street in said city; that the said improvement of Front street has been made and is of great benefit to all said intersecting streets, and to the said city of Toledo, the owner of said streets."

It may have been of great benefit to those streets, but the city cannot be required to pay anything on that account. Upon any construction of this statute the city can only be required to pay in the event of a benefit to the intersections, and there is no averment that the intersections were benefited.

We hold, therefore, upon the case as presented, that no equity is shown, and the finding will be for the city. The petition will be dismissed.

**Haynes** and **Wildman, JJ.,** concur.